UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAVID SAAD,<br>Plaintiff,<br><br>v.<br><br>HEXAGON METROLOGY, INC.,<br>Defendant.<br><br>v.<br><br>OCCUPATIONAL HEALTH<br>CENTERS OF THE SOUTHWEST,<br>P.A.,<br>Third Party Defendant. | C.A. No. 17-202-JJM-LDA |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Defendant Hexagon Metrology, Inc. ("Hexagon") moves for summary judgment on all counts of Plaintiff David Saad's Complaint. ECF No. 27. For the reasons below, the Court GRANTS Hexagon's Motion for Summary Judgment in its entirety.

I. BACKGROUND

Mr. Saad began working for Hexagon as an Assistant Marketing Manager in March 2015. Before being hired, Mr. Saad took a pre-employment drug test and a pre-employment physical performed by Third-Party Defendant, Occupational Health Centers of the Southwest, P.A. ("Concentra"). Susan Booth, Hexagon's Manager of Health and Well-Being, scheduled the tests with Concentra and received a fax from Concentra showing that Mr. Saad passed his pre-employment physical and drug test.

Soon after he started working for Hexagon, Mr. Saad experienced performance issues. As a result of his performance deficiencies, Mr. Saad met with Bridget Benedetti, Hexagon's Director of Marketing and Communications, and was provided with a below standards performance review. Ms. Benedetti also placed Mr. Saad on a written Performance Improvement Plan ("the Plan") that outlined six performance areas of concern and five action areas for improving performance. Mr. Saad's Plan explicitly stated that the completion date for the Plan was June 15, 2015, Mr. Saad's progress would be assessed, and a final determination on whether he raised his performance to a satisfactory level would be made. The Plan also warned that if Mr. Saad's performance did not improve sufficiently, his employment would be reviewed for further action, up to and including termination. Mr. Saad signed the Plan.

After Mr. Saad was placed on the Plan, there were reports of Mr. Saad's insubordination including his disparaging Ms. Benedetti to other Hexagon personnel. At one point, Adam Redford, Hexagon's Trade Show and Events Manager, met with Ms. Benedetti to relay his concerns that Mr. Saad was having a negative effect on the team because of his negative comments.

Four days after the improvement deadline in the Plan, Ms. Benedetti and Glenn Wambolt, Hexagon's then-Director of Human Resources, met with Mr. Saad. They discussed his poor job performance and criticisms of Ms. Benedetti. Mr. Saad denied making the remarks.

Nevertheless, Ms. Benedetti and Mr. Wambolt decided to terminate Mr. Saad's employment effective June 22, 2015. At all relevant times including at the time of

termination, neither Ms. Benedetti nor Mr. Wambolt had knowledge that Mr. Saad suffered from a medical condition or had been prescribed OxyContin while employed at Hexagon.

Separately, on June 8, 2015, Mr. Saad contacted Concentra about his desire to increase his dosage of OxyContin. Concentra's Physician's Assistant, Melissa Mills, contacted Mr. Saad's primary care physician who told Ms. Mills that he had referred Mr. Saad to a specialist for managing his alleged chronic pain. On June 16, 2015, Ms. Mills contacted Ms. Booth at Hexagon and indicated that Mr. Saad wanted to increase his dosage of OxyContin. The same day that Ms. Booth learned of Mr. Saad's prescription drug use and medical condition, she met with Mr. Saad and asked if he "required an accommodation" for his condition. Mr. Saad replied that he did not.

On June 17, 2015, Ms. Booth received a note from Mr. Saad's primary care physician stating that Mr. Saad could work on a higher dosage of OxyContin.[1] Ms. Booth accepted the note and Mr. Saad continued to work at Hexagon until he was terminated on June 22, 2015.

## II. STANDARD OF REVIEW

Summary judgment is proper when the pleadings, discovery and disclosure materials on file, affidavits, and any other admissible material in the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To determine whether

---

[1] Prior to June 17, 2015, Mr. Saad had been prescribed to take OxyContin just once daily and once at night since the beginning of his employment at Hexagon.

3

summary judgment is suitable, the court analyzes the record in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *See Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

The burden falls first on the movant to aver an absence of genuine issue of material fact which requires resolution at trial. *See Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (Citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden then shifts to the nonmovant who must oppose the motion by presenting facts to show a genuine issue of material fact remains. *Id.* A factual issue is genuine if it "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it holds the power to "sway the outcome of the litigation under applicable law." *Nat'l Amusements*, 43 F.3d at 735. The nonmovant must rely on more than "effusive rhetoric and optimistic surmise" to establish a genuine issue of material fact. *Cadle*, 116 F.3d at 960. Rather, the evidence relied on by the nonmovant "must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Nat'l Amusements*, 43 F.3d at 735 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

## III. DISCUSSION

Mr. Saad fails to satisfy the necessary elements of his legal claims against Hexagon. The survival of the claims here center on whether Hexagon knew about

Mr. Saad's alleged disability.[2] First, Mr. Saad's claim that Hexagon failed to accommodate his alleged disability before June 16, 2015 fails because Hexagon did not know about Mr. Saad's disability until that date. Further, when one Hexagon employee, Ms. Booth, learned of Mr. Saad's prescription drug use, she asked Mr. Saad if he required an accommodation and he declined. Second, Mr. Saad's disability discrimination claim fails because neither decisionmaker at Hexagon who terminated him had knowledge of his alleged disability at the time of his termination. Moreover, the record here shows that Mr. Saad was terminated because of his poor performance even after being placed on the Plan.

A. Mr. Saad's Failure to Accommodate Claim Fails

To bring a failure to accommodate claim under the ADA, Mr. Saad must show that (1) he is a handicapped person under the ADA; (2) he is nonetheless qualified to perform the essential functions of the job (with or without accommodation); and (3) the employer knew of the disability but declined reasonably to accommodate it upon request. *See Sepulveda-Vargas v. Caribbean Rests., LLC*, 888 F.3d 549, 553 (1st Cir. 2018). On the facts here, Mr. Saad fails to prove at least the third element of his failure to accommodate claim and so summary judgment enters for Hexagon.

---

[2] Mr. Saad admits that "[k]knowledge of [his] chronic back pain does not equate to knowledge that he suffers from a disability. Unless [he] informed his supervisor that the backpain interferes with a 'major life activity' (*See, e.g., Sullivan v. Neiman Marcus Group, Inc.*, 358 F.3d 110, 114-115 (1st Cir. 2014)), the symptom by itself is insufficient to put Hexagon on notice that Mr. Saad deserved protection under the ADA." ECF No. 47 at 3.

1.  **Mr. Saad Fails To Establish That Hexagon Is Liable For Concentra's Alleged Acts and Omissions**

First, Mr. Saad argues that Concentra initially denied Mr. Saad a reasonable accommodation and Hexagon is liable for the alleged acts and omissions of Concentra on the theory that Concentra was acting as Hexagon's agent. ECF No. 34 at 8. In Rhode Island, "[a]n agency relationship exists when: (1) the principal manifests that the agent will act for him, (2) the agent accepts the undertaking, and (3) the parties agree that the principal will be in control of the undertaking." *Pineda v. Chase Bank United States, N.A.*, 186 A.3d 1054, 1057 (R.I. 2018) (quoting *Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1268 (R.I. 2009)). There is nothing in the record here to prove that Hexagon had control over Concentra's pre-employment physical and drug testing of Mr. Saad.

Mr. Saad also argues that Hexagon had vested apparent authority in Concentra to decide on Hexagon's behalf about hiring and accommodations. To establish the apparent authority of an agent, "facts must be shown that the principal has manifestly consented to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority." *Calenda v. Allstate Ins. Co.*, 518 A.2d 624, 628 (R.I. 1986). There is nothing in front of the Court to show that Hexagon "manifestly consented to" or "knowingly permitted" Concentra to make hiring or accommodation decisions for Hexagon. Without that evidence, Mr. Saad has failed to create an issue of material fact concerning Concentra's agency status here.

### 2. Mr. Saad Fails To Establish that Hexagon Knew Of His Alleged Disability And Declined To Reasonably Accommodate It Upon Request

Mr. Saad's claim that Hexagon failed to provide him with a reasonable accommodation fails. Hexagon was unaware of Mr. Saad's medical condition until June 16, 2015. Upon one Hexagon employee's knowledge of Mr. Saad's prescribed drug use, she asked him whether he required an accommodation and he responded that he did not.

Mr. Saad cannot maintain a failure to accommodate claim during the period from his date of hire in March 2015 through June 16, 2015, because Hexagon did not know about his alleged disability. ECF No. 28-7 at 4, ¶¶ 15-16; ECF No. 28-3 at 2, ¶¶ 12-13; ECF No. 28-2 at 16-18; *See Sepulveda-Vargas*, 888 F.3d at 553 (holding that to bring a failure to accommodate claim under the ADA, employer must know of the disability and decline to accommodate it).

On June 16, 2015, Hexagon's nurse, Ms. Booth, learned of Mr. Saad's prescription drug use from Concentra. ECF No. 28-2 at 22. Upon learning of Mr. Saad's medical condition, Ms. Booth specifically asked Mr. Saad whether he "required an accommodation," and Mr. Saad responded, "no." ECF No. 28-8 at 12. Indeed, Mr. Saad admitted in two sworn statements he submitted to the Rhode Island Commission for Human Rights ("RICHR") that he declined an accommodation. ECF No. 28-8; ECF No. 28-13. An employer's failure to offer an accommodation is an essential element of an accommodation claim, and because Mr. Saad admits that

Hexagon made an offer of accommodation, which he declined, Mr. Saad's failure to accommodate claim must fail. *See Sepulveda-Vargas*, 888 F.3d at 553.

B.  Mr. Saad's Claim for Disability Discrimination Fails

Mr. Saad's claims are governed by the burden shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 802-805 (1973). Under the *McDonnell Douglas* framework, Mr. Saad must first make a *prima facie* showing of discrimination. *See id.* at 802. To establish a *prima facie* case of disability discrimination, Mr. Saad must prove that he (1) suffered from a disability; (2) was otherwise qualified to perform the essential functions of his employment with or without reasonable accommodation; and (3) was subject to an adverse employment action in whole or in part because of his disability. *See Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002). If Mr. Saad establishes a *prima facie* case of discrimination, a rebuttable inference of discrimination arises. *See Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 12 (1st Cir. 1998). Then, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory basis for its employment decision. *Id.* Once the employer meets its burden, the burden returns to the employee to prove "(1) that the reason the employer articulated for the challenged employment action was a pretext or sham, but (2) that its real reason was the employee's [disability]." *Id.*

Mr. Saad fails to establish a *prima facie* case of discrimination because the facts here fail to show that Hexagon was aware of any disability that Mr. Saad had when he was terminated. *See Nilles v. Givaudan Flavors Corp.*, 521 Fed. Appx. 364, 368 (6th Cir. 2013) (affirming summary judgment for employer in ADA claim finding

8

that an employee cannot be considered to have been fired because of disability unless the decisionmaker who fired the individual knew about the disability). Indeed, Ms. Benedetti and Mr. Wambolt, the two individuals who decided to terminate Mr. Saad, were unaware of Mr. Saad's medical condition when he was terminated. ECF No. 28-7 at 4, ¶ 15; ECF No. 28-3 at 2, ¶ 12-13. Additionally, there is no basis connecting Ms. Booth's knowledge of Mr. Saad's medical condition to the decision to terminate Mr. Saad as she did not disclose it to anyone at Hexagon, including Ms. Benedetti and Mr. Wambolt. ECF No. 28-2 at 24.

Further, even if Mr. Saad could establish a *prima facie* case, Hexagon had a legitimate, nondiscriminatory reason to terminate him. The record here is replete with facts establishing that Mr. Saad's job performance failed to meet Hexagon's expectations and he did not perform his work satisfactorily. First, Mr. Saad's unsatisfactory work performance is evidenced by his "below standards performance review" on May 8, 2015 and his placement on a Performance Improvement Plan[3] on May 14, 2015. ECF No. 28-7 at 3, ¶ 10. Mr. Saad signed the Performance Improvement Plan, but his performance did not improve. Rather, there were reports that Mr. Saad began to engage in insubordinate behavior by openly disparaging Ms. Benedetti in front of Hexagon employees. ECF No. 28-9 at 2, ¶ 6; ECF No. 28-7 at 3,

---

[3] The Plan outlined areas of deficient performance including Mr. Saad's inability to understand corporate brand standards, failure to lead a project with an internal client leading to another team member taking over the communications and meeting planning, and lack of focus. ECF No. 28-3 at 7-8.

¶ 12. As a result of Mr. Saad's substandard work and insubordination, Ms. Benedetti and Mr. Wambolt terminated him.

Because the facts establish that Hexagon terminated Mr. Saad for legitimate, nondiscriminatory reasons, Mr. Saad must prove that (1) the reason Hexagon articulated for the termination was a pretext or sham and (2) its real reason was Mr. Saad's disability. *See Shorette*, 155 F.3d at 12. The Court finds that the record is lacking any evidence that Hexagon's proffered reasons for terminating Mr. Saad are a pretext for discrimination. While, at first glance, the issue of timing seems suspicious, Ms. Booth's learning of Mr. Saad's medical condition on June 16, 2015 is irrelevant considering she never disclosed that information and Mr. Saad's work performance was at issue long before Ms. Booth learned of the condition.

## IV. CONCLUSION

For all these reasons, the Court GRANTS Hexagon's Motion for Summary Judgment.[4] ECF No. 27.

---

[4] Accordingly, Concentra is likewise entitled to summary judgment as there is no liability on the part of Hexagon from which it could seek indemnity. The Court GRANTS Concentra's Motion for Summary Judgment. ECF No. 30. The Court also DENIES as moot Hexagon's Motions to Strike. ECF Nos. 38, 46.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

July 8, 2019